[Civ. No. 52045. Second Dist., Div. One. Dec. 6, 1978.]

ELIZABETH MUSGROVE, Plaintiff and Appellant, v.
AMBROSE PROPERTIES, Defendant and Appellant;
UNIGARD INSURANCE GROUP, Intervener and Appellant.

48

---

**COUNSEL**

Wax & Appell and Edward J. Mizrahi for Plaintiff and Appellant.

Morris & Polich, John K. Morris and Robert S. Wolfe for Defendant and Appellant.

Grancell, Kegel & Tobin and John Reiner for Intervener and Appellant.

## OPINION

**LILLIE, Acting P. J.**—Plaintiff sued for personal injuries sustained when she was struck by a bicycle ridden by defendant Sidney Farrington (a 14-year-old boy)[1] on the premises of a shopping center owned by defendant Ambrose Properties. She was injured in the course and scope of her employment, and Unigard Insurance Group, a workmen's compensation insurance carrier, paid to her disability indemnity and medical benefits totaling $7,669.91 on behalf of her employer. By leave of court, Unigard filed a complaint in intervention seeking judgment against defendants in the sum of $7,669.91 on the theory that their negligence caused plaintiff's injuries. (See Lab. Code, § 3853; *Gilford* v. *State Compensation Ins. Fund* (1974) 41 Cal.App.3d 828, 831 [116 Cal.Rptr. 615].)

Pursuant to stipulation, trial of the action was bifurcated, and the issue of liability was tried first. The following evidence was adduced on that issue. For more than a year prior to June 6, 1973, plaintiff, in the course of her employment, drove to the Belmont Shopping Center once a week to deposit mail in a mailbox located there; there on the afternoon of June 6, she double-parked her car in back of other cars in the parking lot of the shopping center, leaving the engine running. The mailbox was located beside one of several pillars which supported a canopy extending over a sidewalk. The sidewalk ran in front of a row of shops. At the outer edge of the sidewalk, and parallel to it, was a passageway three or four feet wide, beyond which was the parking lot. Plaintiff walked from her car to the mailbox and deposited mail; as she stepped from behind the pillar out into the passageway, she was struck by a bicycle ridden by Sidney who was riding from east to west, and did not see plaintiff in time to avoid striking her. Immediately before the accident, plaintiff looked north toward the parking lot; she did not look down the passageway in either direction before entering it. Consequently, she did not see Sidney approaching on his bicycle. Plaintiff was in a hurry to return to her car, but not to the point of endangering her safety. As a result of the accident, plaintiff's left hip was broken and her left elbow was skinned. Before June 6, 1973, plaintiff had seen bicycles ridden on the sidewalk, but not on the passageway. She never registered a complaint either to Ambrose or to any of its tenants regarding the riding of bicycles at the shopping center. Bicycle traffic there was at its heaviest from 2:30 to 5:30 p.m., after school was dismissed for the day.

---

[1] Jannie Farrington, mother of Sidney, also was named as a defendant. Judgments were entered in favor of Sidney and Jannie, and against plaintiff. No appeal was taken from either of those judgments.

Ambrose Properties, a corporation, has owned the Belmont Shopping Center since its completion in 1964. In 1973, Jay Ambrose, a stockholder and officer of the corporation visited the Belmont Shopping Center once a week, usually on Saturday. Mr. Ambrose knew that bicycles were ridden on the premises, but he never received a complaint from any tenant regarding bicycle riding there. Ambrose Properties posted no signs at the shopping center prohibiting the riding of bicycles on the sidewalk and the passageway. It employed no one to patrol or police the premises in order to prevent bicycle riding in those areas. There was no evidence that a bicycle had struck a pedestrian at the shopping center prior to plaintiff's being struck on June 6, 1973.

At the conclusion of the liability phase of the trial, the jury made special findings.[2] Following trial on the issue of damages, the jury returned a verdict of $40,000 in favor of plaintiff and against Ambrose. Judgment was entered on the verdict. That judgment also directed a verdict in favor of Unigard and against Ambrose on Unigard's complaint in intervention.

Ambrose moved for judgment notwithstanding the verdict or for a new trial. The court granted the motion for judgment notwithstanding the verdict and, of its own motion (Code Civ. Proc., § 629) granted as against Unigard, judgment notwithstanding the directed verdict. On the grounds of insufficiency of the evidence to justify the verdict and that the verdict is against law (Code Civ. Proc., § 657, subd. 6), the court conditionally granted Ambrose's motion for new trial (as to plaintiff), such order to be effective only if the judgment notwithstanding the verdict is reversed on appeal. (Code Civ. Proc., § 629.) The court also conditionally granted, on its own motion, a new trial as to Unigard, on the same grounds. Judgment notwithstanding the verdict subsequently was entered. ■■ ■ ■■■■ Plaintiff and Unigard appeal from that judgment, and from order granting a new trial.[3] Ambrose cross-appeals from the judgment entered on the verdict. The cross-appeal is dismissed for failure to file a brief in support thereof. (Cal. Rules of Court, rule 17(a); *Redevelopment Agency* v. *Penzner* (1970) 8 Cal.App.3d 417, 426 [87 Cal.Rptr. 183].)

---

[2] " 'Question No. 1. Was there negligence on the part of the plaintiff which contributed as a proximate cause of her injury? No.

" 'Question No. 2. Was there negligence on the part of the corporation property owner which contributed as a proximate cause of her injury? Yes.

" 'Question No. 3. Was there negligence on the part of Sidney Farrington which contributed as a proximate cause of her injury? No.' "

[3] Plaintiff and Unigard purport to appeal from the order granting judgment notwithstanding the verdict. Such an order is but a step preliminary to final judgment, and

■ A judgment notwithstanding the verdict properly may be granted only when, disregarding conflicting evidence, and giving plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn therefrom, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff. (*McFarland* v. *Voorheis-Trindle Co.* (1959) 52 Cal.2d 698, 703 [343 P.2d 923].) The trial court granted judgment notwithstanding the verdict on the ground there was no evidence that Ambrose violated any duty owed to plaintiff.

■ Everyone is responsible for an injury caused to another by his want of ordinary care or skill in the management of his property. (Civ. Code, § 1714.) Under this rule, the proper test to be applied to the liability of a landowner "is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such a status have some bearing on the question of liability, the status is not determinative." (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) ■ An owner of land held open to the public for business purposes is under a duty to take affirmative action to control the wrongful acts of third persons which threaten the safety of visitors to the premises where he has reasonable cause to anticipate such acts and the probability of injury resulting therefrom. (*Taylor* v. *Centennial Bowl,*

therefore is not appealable. (*Jordan* v. *Talbot* (1961) 55 Cal.2d 597, 602 [12 Cal.Rptr. 488, 361 P.2d 20, 6 A.L.R.3d 161].) The order herein was made on March 18, 1977; plaintiff's notice of appeal from the order was filed March 23, 1977; judgment notwithstanding the verdict was entered March 25, 1977. Rule 2(c), California Rules of Court provides in part: "A notice of appeal filed prior to rendition of the judgment, but after the judge has announced his intended ruling, may, in the discretion of the reviewing court for good cause, be treated as filed immediately after entry of the judgment." This rule applies to a notice of appeal from a nonappealable order. (*Evola* v. *Wendt Construction Co.* (1958) 158 Cal.App.2d 658, 660-661 [323 P.2d 158].) Accordingly, we treat plaintiff's appeal as having been filed after entry of the judgment. Rule 2(c) is inapplicable to Unigard's appeal, inasmuch as it was filed after entry of the judgment. Under the rule that a notice of appeal must be liberally construed in favor of its sufficiency (Cal. Rules of Court, rule 1(a)), notices of appeal referring to an "order" have been interpreted to apply to a "judgment" so as to protect the right of appeal where it is reasonably clear from what appellant was attempting to appeal, and where respondent could not possibly have been misled or prejudiced. (*Vibert* v. *Berger* (1966) 64 Cal.2d 65, 67-68 [48 Cal.Rptr. 886, 410 P.2d 390]; *Luz* v. *Lopes* (1960) 55 Cal.2d 54, 59-60 [10 Cal.Rptr. 161, 358 P.2d 289].) In accordance with these principles, we deem Unigard's appeal to have been taken from the judgment notwithstanding the verdict rather than from the nonappealable order granting the judgment.

The order granting a new trial is appealable. (Code Civ. Proc., § 904.1, subd. (d).)

*Inc.* (1966) 65 Cal.2d 114, 121 [52 Cal.Rptr. 561, 416 P.2d 793].) As explained in Restatement Second of Torts, section 344, comment f: "Since the [landowner] is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it."

▆ The determination of duty is basically a question of law. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].) Foreseeability of the risk is of primary importance in establishing the element of duty (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 739 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]), and foreseeability is a question of fact. (*Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d 40, 46.) Accordingly, a mixed question of law and fact may arise out of the relationship of foreseeability to the creation of a duty. (*Barker* v. *Wah Low* (1971) 19 Cal.App.3d 710, 721-722 [97 Cal.Rptr. 85].) ▆ "[C]ourts, on a case-to-case basis, analyzing all the circumstances, will decide what the ordinary man under such circumstances should reasonably have foreseen. The courts thus mark out the areas of liability, *excluding the remote and unexpected.*" (*Dillon* v. *Legg, supra,* 68 Cal.2d 728, 741.) (Italics added.)

In the case at bench, the evidence and the reasonable inferences therefrom show that Ambrose knew bicycles were ridden at the Belmont Shopping Center, and that pedestrians also were present on the premises. Under these circumstances, it cannot be said, as a matter of law that the possibility of a bicyclist striking a pedestrian was so "remote and unexpected" that an ordinary man should not reasonably have foreseen it. The foreseeability of such an accident thus was a question of fact, and the evidence permits a finding that the chance of a bicyclist striking a pedestrian, unless precautions were taken, was foreseeable. The fact that no similar accident occurred before plaintiff was struck does not show that such an accident might not reasonably have been anticipated. (*Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d 40, 47; *Ridley* v. *Grifall Trucking Co.* (1955) 136 Cal.App.2d 682, 686 [289 P.2d 31].)

■ The elements of actionable negligence, in addition to a duty to use due care, include a breach of such duty, and the breach as the proximate cause of the resulting injury. (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770].)

■ Breach of duty is usually a fact issue for the jury; if the circumstances permit a reasonable doubt whether the defendant's conduct violates the standard of due care, the doubt must be resolved by the jury as an issue of fact rather than of law by the court. (*Starr* v. *Mooslin* (1971) 14 Cal.App.3d 988, 998 [92 Cal.Rptr. 583].) In determining whether defendant breached a duty of care owed to plaintiff, the magnitude of the harm likely to result from defendant's conduct must be balanced against the social value of the interest which he is seeking to advance, and the ease with which he may take precautions to avoid the risk of harm to plaintiff. (*Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232, 237-238, fn. 3 [60 Cal.Rptr. 510, 430 P.2d 68].) ■ Ambrose was the owner of a shopping center which furnished goods and services to members of the public including bicyclists and pedestrians. The precautions Ambrose could have taken to avoid or minimize the risk of a bicyclist striking a pedestrian included posting signs prohibiting bicycle riding on sidewalks and passageways, or employing a guard to control bicycle riding in those areas. The jury reasonably could find that the risk of harm to a pedestrian struck by a bicycle outweighed both the social value of permitting bicyclists unrestricted access to all areas of the shopping center, and the burden imposed on Ambrose in taking steps to prevent bicycle riding on sidewalks and passageways. Evidence that Ambrose did nothing to control bicycle riding in these areas supports the jury's implied finding that Ambrose thereby breached its duty of care to plaintiff.

■ Given a breach of duty by the defendant, the question whether that breach caused the damage is also a factual issue. (*Starr* v. *Mooslin, supra,* 14 Cal.App.3d 988, 998; *Klopfenstein* v. *Rentmaster Trailer Co.* (1969) 270 Cal.App.2d 811, 814 [76 Cal.Rptr. 126].) ■ The evidence herein supports a finding that Ambrose's failure to take any measures to control bicycle riding was the proximate cause of plaintiff's injuries.

In sum, if we give the evidence tending to establish negligence all the value to which it is legally entitled, that evidence supports a verdict in favor of plaintiff. It follows that the trial court erred in granting the judgment notwithstanding the verdict.

The court granted a new trial on the grounds that the evidence is insufficient to justify the verdict, and that the verdict is against law. In support of both grounds, the court specified the same reason it gave to support the granting of the judgment notwithstanding the verdict, namely: Ambrose owed no duty to pedestrians at its shopping center to control bicycle riding there.[4] In the court's specification of reasons, the only references to the evidence were these: "there was no way indicated in the evidence . . . where the shopping center owner, as distinguished from the public street store owner, can reasonably prevent [bicyclists] from riding bicycles in the presence of pedestrian patrons of those shopping centers or even public street stores"; "There was no intimation in the evidence, at least to the developer of this shopping center and the defendant-owner thereof, that accidents between bicycle riders and pedestrians, any more than accidents between automobiles and pedestrians, would occur by the very design and maintenance of the center"; "The evidence here does not show any knowledge, or circumstances creating chargeable knowledge, attributable to the shopping center owner concerning any such volume of bicycle riding as to make the premises, per se, dangerous to pedestrians or others any more than automobiles would be deemed here, per se, dangerous to pedestrians or others"; "Before liability can be foisted on a defendant he must have notice or be chargeable with notice of a dangerous condition or *danger* and injury must be reasonably foreseeable. That notice is remarkably here absent"; "there is a complete absence of any evidence that any other accident took place in all the years of the maintenance of this shopping center"; "the evidence is uncontradicted that [Ambrose] had never received any complaint concerning bicycle riding."

While the order granting a new trial purports to rest on two grounds—that the verdict is against the law and insufficiency of the evidence—the trial court's specification of reasons reveals that only the former ground is involved. The order, to the extent that it purports to grant a new trial for insufficient evidence, stands or falls upon the factors stated in the specification of reasons. (Code Civ.Proc., § 657.) Those specifications state in effect that the trial court deemed the evidence to be insufficient because as a matter of law the evidence does not establish any duty of the defendant to the plaintiff because there was no actual notice of the dangerous condition. Thus, it is clear from the statement that the

[4]The specification of reasons begins with the following statement: "In granting the Judgment N.O.V. this Court feels that there is no basis to impose a higher duty on the property owner of a shopping center than we can impose upon a property owner of a public street store. Both are subject to the same passage of bicycle riders who are impliedly invited to patronize them. . . ."

trial court granted a new trial not because it disbelieved any of the testimony presented by the plaintiff or because it drew inferences from the total record unfavorable to the plaintiff. Rather, the statement establishes that the trial court, after treating the plaintiff's case as entirely credible, concluded that as a matter of law no duty was established.

Code of Civil Procedure section 657 provides in part: "A new trial shall not be granted upon the ground of insufficiency of the evidence to justify the verdict . . . unless *after weighing the evidence* the court is convinced from the entire record, including reasonable inferences therefrom, that the . . . jury clearly should have reached a different verdict . . . ." (Italics added.) ▮ Thus, insufficiency of the evidence as ground for a new trial means "the insufficiency that arises in the mind of the trial judge when he weighs the conflicting evidence and finds that which supports the verdict and judgment weighs, in his opinion, less than that which is opposed to it." (*Bray* v. *Rosen* (1959) 167 Cal.App.2d 680, 683 [335 P.2d 137].) The court's specification of reasons herein indicates merely that the court concluded there was a total lack of evidence to support a finding that Ambrose owed pedestrians a duty to control bicycle riding.[5] Contrary to the mandate of section 657, the court did not weigh the evidence and reasonable inferences therefrom in determining that no such duty existed. As stated in *McCown* v. *Spencer* (1970) 8 Cal.App.3d 216, 227 [87 Cal.Rptr. 213]: "It is apparent that the court granted a new trial on this ground [insufficiency of the evidence] because it believed there was a total lack of any material evidence to support the verdict rather than because the court, after weighing it, believed the evidence failed to preponderate and the jury should have reached a different verdict."

Code of Civil Procedure section 657 further provides that, on appeal from an order granting a new trial upon the ground of insufficiency of the evidence to justify the verdict, "it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, and such order shall be reversed as to such ground only if there is *no substantial basis in the record for any of such reasons.*" (Italics added.) Here, the reasons specified by the court either find no support in the record, or are irrelevant to a determination of the existence of a duty on the part of Ambrose.[6] It

_____

[5]Plaintiff does not challenge the adequacy of the specification of reasons, which appears to satisfy the requirements of section 657. (See *Scala* v. *Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 363-364 [90 Cal.Rptr. 592, 475 P.2d 864]; *Mercer* v. *Perez* (1968) 68 Cal.2d 104, 112-116 [65 Cal.Rptr. 315, 436 P.2d 315].)

[6]It is not true, as stated by the court in its specification of reasons, that the evidence fails to indicate the nature of the precautions which Ambrose reasonably could have taken to

follows that the granting of a new trial cannot be sustained on the ground of insufficiency of the evidence to justify the verdict.

As to the second ground, that the verdict is against law, that too, cannot be sustained. The phrase "against law" does not import a situation in which the court weighs the evidence and finds a balance against the verdict, as it does in considering the ground of insufficiency of the evidence. The granting of a new trial on the ground that the verdict is against law is authorized only where there is no substantial evidence to sustain the verdict. (*S. F. Bay Area Rapid Transit Dist.* v. *McKeegan* (1968) 265 Cal.App.2d 263, 272-273 [71 Cal.Rptr. 204]; *Thompson* v. *Guyer-Hays* (1962) 207 Cal.App.2d 366, 375 [24 Cal.Rptr. 461].) Inasmuch as the evidence is sufficient to support a verdict in favor of plaintiff, a new trial was improperly granted on the ground that the verdict is against law.

Ambrose moved for a new trial on additional grounds (Code Civ. Proc., § 657, subds. 1, 3, 5, 7), but in its reply brief, Ambrose does not argue that the order for a new trial is sustainable on any of these grounds. In accordance with Code of Civil Procedure section 657,[7] we have reviewed the entire record in an effort to determine whether the order should be affirmed on any of the grounds stated in the motion but not specified in the order; our review compels the conclusion that it cannot.

The judgment notwithstanding the verdict is reversed. The order granting a new trial is reversed. The cross-appeal from the judgment entered on the verdict is dismissed.

Thompson, J., concurred.

---

prevent bicyclists from riding in the presence of pedestrians. Moreover, there is no basis in the evidence for the court's assumption that because the owner of a store located on a public street cannot prevent bicycle riding in the vicinity of his premises, no such duty can be imposed on Ambrose, the owner of a private shopping center. As to the "design and maintenance" of the shopping center, the evidence shows, without contradiction, that the center was designed and maintained so as to give bicyclists unrestricted access to areas frequented by pedestrians. The volume of bicycle traffic in relation to the volume of automobile traffic at the shopping center simply is not pertinent to the question whether Ambrose reasonably could have foreseen that bicyclists would endanger the safety of pedestrians. The lack of evidence of prior accidents, and of complaints concerning bicycle riding, does not establish that Ambrose could not reasonably have anticipated the type of accident which befell plaintiff.

[7]The applicable provision of section 657 reads: "On appeal from an order granting a new trial the order shall be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons . . . ."

HANSON, J., Concurring and Dissenting.—I concur with the portions of the majority opinion that hold the trial court erred in granting the judgment notwithstanding the verdict and the dismissal of the cross-appeal from the judgment entered on the verdict for the reasons stated.

I respectfully dissent only as to that portion of the majority opinion reversing the conditional order granting a new trial.

In my opinion the fact that the court below specified the same reasons for granting a new trial that it gave to support the granting of the judgment notwithstanding the verdict, standing alone, does not compel reversal of the conditional order granting a new trial. Nor is the affirmance of the order granting a new trial inconsistent with the conclusion that the trial court erred in granting the judgment notwithstanding the verdict. The applicable standards of review of the two motions are different.

As pointed out in the majority opinion, in the case of a judgment notwithstanding the verdict a determination must be made that " ' "[t]here is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff." [Citation.]' " (*McFarland* v. *Voorheis-Trindle Co.* (1959) 52 Cal.2d 698, 703 [343 P.2d 923].) On the other hand the granting of a motion for a new trial is left to the sound discretion of the trial court and "[o]n appeal, all presumptions are in favor of the order as against the verdict, and the reviewing court will not disturb the ruling unless a manifest and unmistakable abuse of discretion is made to appear. [Citations.]" (*Mercer* v. *Perez* (1968) 68 Cal.2d 104, 112 [65 Cal.Rptr. 315, 436 P.2d 315].)

In *Mercer* the court said at pages 112-113:

"[T]wo purposes are served by the present requirement of specification of reasons, and both are related to the traditionally broad powers exercised by the trial judge in passing on a motion for new trial. . . .

"[O]ne of the functions of the requirement of specification of reasons is to promote judicial deliberation before judicial action, and thereby 'discourage hasty or ill-considered orders for new trial.' (Review of Selected 1965 Code Legislation (Cont.Ed.Bar), p. 81.) . . .

"The second purpose of this requirement is to make the right to appeal from the order more meaningful. While the rarity of reversals is doubtless

due to the circumstance that discretion is not often abused, it must be recognized that under the prior law an appellant challenging an order granting a new trial tended to have great difficulty in presenting his case. It often occurred, for example, that the notice of motion was predicated on all or most of the statutory grounds, and the subsequent order specified neither the ground or grounds found applicable nor the reasons therefor; in that event, the appellant was left in the dark as to which aspect of the trial to defend, and quite understandably struck out blindly in several directions at once. This process, however, was not likely to illuminate the reviewing court, which remained equally uninformed of the basis on which the trial judge acted. . . ."

In *Scala* v. *Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 370 [90 Cal.Rptr. 592, 475 P.2d 864], quoted from *Mercer* v. *Perez, supra,* 68 Cal.2d 104, where that court said at page 115: "No hard and fast rule can be laid down as to the content of such a specification [reasons for granting a new trial], and it will necessarily vary according to the facts and circumstances of each case."

In my view the legislative intent of Code of Civil Procedure section 657 and the twofold purposes underlying the requirement of a specification of reasons as described in *Mercer* (68 Cal.2d at pp. 112-113) are satisfied.

Here, as I construe the reasons specified (as set forth in the majority opinion) the trial judge reviewed and weighed all the evidence relating to the factual issue of notice to defendant landowner Ambrose Properties and concluded that there was insufficient evidence to charge Ambrose with prior knowledge of the existence of a dangerous condition which was created by bicycles being ridden in the area where the accident happened.

I conclude the record reflects the trial judge gave mature and careful reflection in the instant case and adequately specified his reasons within the spirit of *Scala* and *Mercer* for granting a new trial on the ground that the evidence is insufficient to justify the verdict. I cannot say he manifestly and unmistakenly abused his discretion in granting a new trial.

A petition for a rehearing was denied January 2, 1979.