[No. B041704. Second Dist., Div. Seven. Mar. 30, 1990.]

EVANGELINE ONCIANO, Plaintiff and Appellant, v.
GOLDEN PALACE RESTAURANT, INC., Defendant and
Respondent.

**COUNSEL**

Arthur H. Lampel for Plaintiff and Appellant.

Mallory, Brown-Curtis & Mallory and Vera Brown-Curtis for Defendant and Respondent.

**OPINION**

**LILLIE, P. J.**—Plaintiff Evangeline Onciano appeals from summary judgment in favor of defendant Golden Palace Restaurant, Inc., in a negligence action.

### FACTS

On May 17, 1986, plaintiff and three companions dined at defendant restaurant in the Chinatown area of Los Angeles. They arrived at about

11:30 p.m. and parked their cars in the parking lot, owned by defendant, at the rear of the restaurant. At about 12:30 a.m. plaintiff and her companions left the restaurant. Before they reached their cars plaintiff saw three men jump over a fence into the parking lot. As plaintiff was about to enter her car the men came up to her, robbed her, and threatened to kidnap her. Plaintiff struggled with one of the men, who had a gun, and they fell to the ground. The man got up, kicked plaintiff, and escaped in her car with his fellow robbers.

Plaintiff sued defendant for damages for negligence. The complaint alleged that defendant knew or should have known that the area in which its parking lot was situated was frequented by gangs and individuals with a known propensity for violence. As the owner of the parking lot defendant owed a duty to plaintiff, a member of the public making use of the lot, to operate, maintain and supervise it in a safe manner. Defendant breached such duty by failing properly to light, fence and guard the parking lot and take other reasonable steps to protect members of the public, including plaintiff, who were lawfully upon the parking lot. As a proximate result of defendant's breach of duty plaintiff was assaulted and robbed in the parking lot by third persons and thereby incurred serious and permanent bodily injury and emotional distress as well as loss of personal property.

Defendant moved for summary judgment on the ground it is not liable for injuries caused by the unforeseeable criminal conduct of third persons. In support of the motion defendant presented excerpts from the deposition of its general manager, Edmund Lee, who testified: The overall crime rate in Chinatown is "minimal" and the crime rate in the immediate area of defendant's restaurant is "very low." Between January 1, 1980, and May 17, 1986, he was not aware of any criminal incidents occurring in defendant's parking lot or anywhere else on defendant's property. Mr. Lee was defendant's general manager throughout this period and his employees would have informed him of such incidents if any had occurred. Defendant's parking lot is approximately 4,000 square feet in area and is enclosed by a chain link fence about 6 feet high. Mr. Lee described the lights in the parking lot at the time of plaintiff's assault; these included four 500-watt spotlights, 16 floodlights in the ceiling of the carport, and a "Golden Palace" electric sign. According to other evidence in support of defendant's motion, at the time of plaintiff's assault and robbery defendant employed a parking attendant. His hours were 10 a.m. to 2:30 p.m. and 5:30 to 10 p.m.; he worked until 11 p.m. if there was a party.

In her declaration in opposition to the motion for summary judgment plaintiff stated that when she was assaulted and robbed defendant's parking lot was dark; the only lights which were lit were in the carport area. No

parking attendant was on duty. In her deposition plaintiff testified that the fence around the parking lot was approximately four feet high at the point where her car was parked.

The trial court granted the motion. Summary judgment was entered in favor of defendant and against plaintiff. This appeal followed.

DISCUSSION

I

STANDARD OF REVIEW

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) ██ The purpose of summary judgment is to penetrate evasive language and adept pleading and ascertain, through supporting and opposing papers, the presence or absence of triable issues of fact. (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310]; *Charpentier* v. *Von Geldern* (1987) 191 Cal.App.3d 101, 106 [236 Cal.Rptr. 233].) Accordingly, the function of the trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist and not to decide the merits of the issues. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

██ The reviewing court conducts a de novo examination to determine whether there are any genuine issues of material fact or whether the moving party is entitled to summary judgment as a matter of law. (*Decker* v. *City of Imperial Beach* (1989) 209 Cal.App.3d 349, 353 [257 Cal.Rptr. 356].) ██ To succeed, a defendant moving for summary judgment "must conclusively negate a necessary element of the plaintiff's case, and demonstrate that under no hypothesis is there a material issue of fact that requires the process of a trial." (*Donald* v. *Sacramento Valley Bank* (1989) 209 Cal.App.3d 1183, 1190 [260 Cal.Rptr. 49].)

## II

## NEGLIGENCE

### A

### *Duty of Care*

"The sine qua non of any negligence action is . . . the existence of a duty of care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member." (*Gregorian* v. *National Convenience Stores, Inc.* (1985) 174 Cal.App.3d 944, 948 [220 Cal.Rptr. 302].) A landowner has a duty " 'to take affirmative action to control the wrongful acts of third persons which threaten invitees where the [owner] has reasonable cause to anticipate such acts and the probability of injury resulting therefrom.' [Citation.]" (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 123 [211 Cal.Rptr. 356, 695 P.2d 653].) Whether such a duty exists is a question of law to be determined on a case-by-case basis. (*Id.*, at p. 124.) In negligence law duty is simply the court's " 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' [Citation.]" (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].)

The chief element in determining whether defendant owes a duty to plaintiff is the foreseeability of the risk. (*Hedlund* v. *Superior Court* (1983) 34 Cal.3d 695, 705 [194 Cal.Rptr. 805, 669 P.2d 41, 41 A.L.R.4th 1063]; *Sun 'n Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671, 695 [148 Cal.Rptr. 329, 582 P.2d 920].) While in fact-specific settings foreseeability may be a factual issue for the jury, in a court's determination of the existence of duty as a question of law, foreseeability is also a question of law. (*Gray* v. *America West Airlines, Inc.* (1989) 209 Cal.App.3d 76, 82 [256 Cal.Rptr. 877]; *Clarke* v. *Hoek* (1985) 174 Cal.App.3d 208, 214 [219 Cal.Rptr. 845].) Foreseeability " 'is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.' [Citation.]" (*Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57 [192 Cal.Rptr. 857, 665 P.2d 947].) Thus, in determining the existence of a landowner's duty to protect invitees from the wrongful conduct of third persons, foreseeability is measured by all of the circumstances including the nature, condition and location of the defendant's premises and defendant's prior experience, bearing in mind that what is required to be foreseeable is the general nature of the event or harm, not its precise nature or manner of occurrence. (*Isaacs* v.

*Huntington Memorial Hospital, supra*, 38 Cal.3d 112, 129; *Lopez* v. *McDonald's Corp.* (1987) 193 Cal.App.3d 495, 509 [238 Cal.Rptr. 436].)

In support of its motion for summary judgment, defendant produced evidence that no criminal activity took place in its parking lot, or elsewhere on its premises, during a period of approximately six and a half years preceding plaintiff's assault and robbery. While the occurrence of prior similar incidents is an important factor to be considered in determining foreseeability, the lack of such incidents does not by itself negate the element of foreseeability as a matter of law. (*Isaacs* v. *Huntington Memorial Hospital, supra*, 38 Cal.3d at pp. 125-126.) Regarding the location of defendant's property, Mr. Lee, defendant's general manager, expressed the opinion that the crime rate in Chinatown is "minimal" and the crime rate in the immediate vicinity of defendant's restaurant is "very low." Mr. Lee did not claim to be an expert on crime statistics and defendant presented no evidence to back up his opinion. ■ Because papers filed in support of a motion for summary judgment must be strictly construed (*Lucchesi* v. *Giannini & Uniack* (1984) 158 Cal.App.3d 777, 782 [205 Cal.Rptr. 62]), we disregard Mr. Lee's unsubstantiated opinion regarding crime rates. ■ Defendant's property in question is a parking lot. Such a facility is largely deserted and automobiles there are left unattended for long periods of time thereby furnishing " 'an especial temptation and opportunity for criminal misconduct' " (*Gomez* v. *Ticor* (1983) 145 Cal.App.3d 622, 628 [193 Cal.Rptr. 600]), particularly at night. "[C]ommon experience and reason support the conclusion more robberies occur at night; fewer people are around to interfere with or witness the crime." (*Cohen* v. *Southland Corp.* (1984) 157 Cal.App.3d 130, 141 [203 Cal.Rptr. 572].) Accordingly, for purposes of assessing a duty on defendant's part, we conclude it was reasonably foreseeable that defendant's patrons using its parking lot at night could become the victims of criminal conduct and suffer consequent injuries.

■ "Foreseeability is not coterminous with duty" (*Cohen* v. *Southland Corp., supra*, 157 Cal.App.3d 130, 138), but merely one factor to be considered in determining whether a landowner owes a duty in a particular case. (*Isaacs* v. *Huntington Memorial Hospital, supra*, 38 Cal.3d at p. 125.) The other factors to be balanced in determining the existence of duty are: "[T]he degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70

Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) Expressed otherwise, " 'the magnitude of the harm likely to result from defendant's conduct must be balanced against the social value of the interest which he is seeking to advance, and the ease with which he may take precautions to avoid the risk of harm to plaintiff.' " (*Gomez* v. *Ticor, supra,* 145 Cal.App.3d 622, 629.) ■ Such a balancing likewise points to the existence of a duty on defendant's part to take measures for the protection of patrons who use its parking lot at night.

The potential physical harm and loss of property such patrons are likely to suffer at the hands of criminals outweigh the social value of keeping defendant's parking lot open to customers dining in its restaurant at night if security measures are not taken to protect those customers. Providing protection would not be unduly burdensome to defendant, as witness the fact that when plaintiff was assaulted and robbed a lighting system was in place at the parking lot, the lot was fenced, and defendant had a parking attendant in its employ.[1] The finder of fact could determine that such measures, if fully functional (i.e., lights lit, fence adequate, parking attendant on duty), furnished sufficient protection for defendant's patrons using the parking lot at night.

## B

### *Breach of Duty*
### *and*
### *Proximate Cause*

■ The elements of actionable negligence, in addition to a duty to use due care, include breach of that duty and a proximate or legal causal connection between the breach and plaintiff's injuries. (*Campbell* v. *Bank of America* (1987) 190 Cal.App.3d 1420, 1428 [235 Cal.Rptr. 905].)

■ "Breach of duty is usually a fact issue for the jury; if the circumstances permit a reasonable doubt whether the defendant's conduct violates the standard of due care, the doubt must be resolved by the jury as an issue of fact rather than of law by the court." (*Musgrove* v. *Ambrose Properties* (1978) 87 Cal.App.3d 44, 53 [150 Cal.Rptr. 722].) ■ On this record it is a question of fact whether the lights in the parking lot were on when plaintiff was assaulted and robbed. The height of the fence around the parking lot was in dispute; it is for the trier of fact to determine whether the

---

[1] A parking attendant could furnish protection for defendant's patrons not by going to their aid if they are attacked by criminals, but by obviating the possibility of such an attack in that he parks and retrieves patrons' cars for them, thereby relieving them of the need to be abroad in the lot.

fence, regardless of its height, was an adequate security measure. Defendant conceded that its parking attendant usually goes off duty at 10 p.m. Again, it is a question of fact whether the attendant's hours of service were reasonable under the circumstances. In short, the jury must decide whether the security measures in place at the time plaintiff used defendant's parking lot were adequate or whether they were insufficient to discharge defendant's duty of care. (See *Isaacs* v. *Huntington Memorial Hospital, supra*, 38 Cal.3d 112, 131.)

 Like breach of duty, proximate cause ordinarily is a question of fact. (*Fagerquist* v. *Western Sun Aviation, Inc.* (1987) 191 Cal.App.3d 709, 719 [236 Cal.Rptr. 633].) It " 'may be decided as a question of law only if, "under the undisputed facts, there is no room for a reasonable difference of opinion." ' " (*City of Los Angeles* v. *Shpegel-Dimsey, Inc.* (1988) 198 Cal.App.3d 1009, 1021-1022 [244 Cal.Rptr. 507].) Under this standard it is clear that proximate cause, too, is a question of fact which cannot be resolved by summary judgment.

Citing *Constance B.* v. *State of California* (1986) 178 Cal.App.3d 200 [223 Cal.Rptr. 645], defendant contends summary judgment was properly entered in its favor for lack of proximate cause. In *Constance B.* plaintiff was assaulted at night in the women's restroom of a state-owned roadside rest area. Her complaint alleged that as a result of improper lighting of the premises, her assailant was able to conceal himself in a place adjacent to the women's restroom, follow her into the restroom unnoticed, and attack her. Summary judgment for defendant was affirmed on the ground the lighting condition was not a proximate cause of the assault, the court noting that "[o]n the facts adduced in the summary judgment proceedings the *only* available inference is that plaintiff's assailant was standing in the light when she saw him staring at her" before she entered the restroom. (178 Cal.App.3d at p. 211, original italics.)

*Constance B.* does not support the trial court's entry of summary judgment in favor of defendant. The court explained its ruling as follows: "What caused the injury to the plaintiff in this case was the criminal act of three people, not anything that defendant did or did not do such as lighting, fencing or the presence or absence of a parking attendant." The court's analysis of proximate cause to defeat plaintiff's action cannot be sustained. "[T]he fact that the plaintiff's injuries were caused by a third party would not absolve the defendant of liability: The concept of intervening causation is inapplicable here: the cause of action is based upon the assumption that an act by a third party caused plaintiff's injuries and is addressed to the issue of whether defendant had a duty to prevent such act. If the realizable likelihood that a third person may act in a particular

manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby." (*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 808 [205 Cal.Rptr. 842, 685 P.2d 1193], internal quotation marks omitted.)

## DISPOSITION

The judgment is reversed. Costs on appeal are awarded to plaintiff.

Johnson, J., concurred.

**WOODS (Fred), J.,** Concurring and Dissenting.—I am constrained to concur in the majority opinion, pursuant to the strong dicta expressed by a unanimous California Supreme Court in *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112 [211 Cal.Rptr. 356, 695 P.2d 653], establishing, inter alia, that the absence of prior similar incidents will not absolutely shield a business inviter from liability to its injured business invitee for criminal acts of third parties on the business premises.

My reluctance to join willingly in the majority opinion stems from a feeling of inequity that results in a case such as the present one when the record on appeal is devoid of any evidence that the business is located in a high crime area and uncontradicted evidence in the record indicates the absence of prior similar criminal conduct on the premises for an appreciable period of time (six and one-half years). I can understand the emotional underpinnings in *Isaacs* where a doctor was shot point blank in the chest by an unknown criminal assailant in the research parking lot of the Huntington Memorial Hospital thereby inflicting grave injuries on him. However, *Isaacs* not only contained a record on appeal showing prior similar third party criminal attacks which dictated the need for the presence of armed guards on the premises but also a dangerous environment created by a hospital with an active emergency room which had with historical frequency treated patients for injuries inflicted at the hands of violent criminals.

The broad brush dicta used by our California Supreme Court in *Isaacs* to reverse a considerable body of appellate law which had made proof of prior similar criminal acts a sine qua non of the injured plaintiff's case has, at least under the facts of this case, led to an inequity. I would respectfully encourage our Supreme Court to reexamine its expansive dicta on this issue in hopes of devising a more equitable rule of foreseeability to fit cases such as this one.

I respectfully dissent from those portions of the majority opinion which appear to have created or have become inappropriately close to creating "law of the case" on the issue of the presence of *duty*. Those portions of the opinion appear as follows: 1. At page 393, *ante,* where it is stated: "Accordingly, for purposes of assessing a duty on defendant's part, we conclude it was reasonably foreseeable that defendant's patrons using its parking lot at night could become the victims of criminal conduct and suffer consequent injuries."

2. At page 394, *ante*, after a cursory reference to the factors to be considered in establishing the existence of "duty" mentioned in *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], but without integration with the facts of this case, it is stated: "Such a balancing likewise points to the existence of a duty on defendant's part to take measures for the protection of patrons who use its parking lot at night."

Other language in the majority opinion is highly suggestive of the presence of "duty" in this case as a matter of law but seems to stop short of creating "law of the case" on the issue. To the extent that other language in the majority opinion can be interpreted as creating "law of the case" on the question of the presence of duty under these facts, I also respectfully dissent therefrom.

The posture of this case would indicate that the trier of fact should be free to resolve the triable issues of material fact pertaining to the existence or nonexistence of duty unencumbered by language either creating or implying the existence of "law of the case" on the duty issue.

Except as herein stated, I concur in the judgment expressed in the majority opinion.

Respondent's petition for review by the Supreme Court was denied June 27, 1990.