[Civ. No. 40200. First Dist., Div. Four. Dec. 13, 1977.]

KIM ELIZABETH O'HARA, Plaintiff and Appellant, v.
WESTERN SEVEN TREES CORPORATION
et al., Defendants and Respondents.

COUNSEL

Gary C. Smith, Roger Sullivan and John H. Hinkle for Plaintiff and Appellant.

Abramson & Bianco and Barbara J. R. Jones as Amici Curiae on behalf of Plaintiff and Appellant.

Owen, Melbye & Rohlff and Richard B. Melbye for Defendants and Respondents.

OPINION

**CHRISTIAN, J.**—Kim Elizabeth O'Hara appeals from a judgment of dismissal which was rendered after the court sustained a demurrer to her complaint for damages. Appellant seeks recovery from Western Seven Trees Corporation and others to compensate her for being raped. The complaint alleged two causes of action. ▇▇ The first claimed that respondents, the owners and operators of the apartment complex where appellant resided, were negligent in failing to provide "adequate security," in misrepresenting the security measures in effect on the premises, in concealing information concerning a man who had raped several female tenants, and in failing to warn plaintiff of the danger of rape. In the second cause of action, for deceit, it was alleged that respondents knowingly misrepresented the safety and security of the

complex with the intent to induce appellant to rent an apartment. Punitive damages were sought on the basis that the alleged misrepresentations were fraudulent.

A demurrer having been sustained, the following factual allegations, drawn from the complaint, must be deemed to be true. (*Stanson v. Brown* (1975) 49 Cal.App.3d 812 [122 Cal.Rptr. 862].) Before April 4, 1975, a Caucasian male had raped several tenants of the Seven Trees Apartments in San Jose. Respondents knew of the crimes, were aware of the conditions indicating a likelihood that the rapist would repeat his attacks, and had been supplied by the local police with composite drawings of the suspect and a general description of his modus operandi. On April 4, 1975, respondents assured appellant, a prospective tenant, that the premises were safe and were patrolled at all times by professional guards. Respondents knew these statements were false and disclosed no information concerning the assaults. Appellant, believing and relying upon respondents' representations, was induced to rent an apartment in the complex.

On July 16, 1975, appellant was raped in her apartment; she later identified her assailant as the same person who had been depicted in the composite drawings which had earlier been supplied to respondents and were still in their possession.

Generally, a person is liable for injuries caused by his failure to exercise reasonable care under the circumstances. (Civ. Code, § 1714; *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) Traditionally, a landlord had no duty to protect his tenants from the criminal acts of others, but an innkeeper was under a duty to protect his guests. (*Totten* v. *More Oakland Residential Housing, Inc.* (1976) 63 Cal.App.3d 538, 543 [134 Cal.Rptr. 29]; *Kline* v. *1500 Massachusetts Avenue Apartment Corp.* (D.C. Cir. 1970) 439 F.2d 477, 482 [141 App.D.C. 370, 43 A.L.R.3d 311].) But in recent years, the landlord-tenant relationship, at least in the urban, residential context, has given rise to liability under circumstances where landlords have failed to take reasonable steps to protect tenants from criminal activity. (See, e.g., *Kline* v. *1500 Massachusetts Avenue Corp., supra,* 439 F.2d 477; *Samson* v. *Saginaw Professional Bldg., Inc.* (1975) 393 Mich. 393 [224 N.W.2d 843]; *Johnston* v. *Harris* (1972) 387 Mich. 569 [198 N.W.2d 409]; see Annot. (1972) 43 A.L.R.3d 331.) It has been held that since only the landlord is in the position to secure common areas, he has a duty to protect against types of crimes of which he has notice and which are

likely to recur if the common areas are not secure. Liability does not make the landlord an insurer of the tenants' safety; the duty is merely to exercise reasonable care. (*Totten* v. *More Oakland Residential Housing, Inc., supra,* 63 Cal.App.3d at p. 542; *Kline* v. *1500 Massachusetts Avenue Apartment Corp., supra,* 439 F.2d at pp. 483, 484.)

No California decision has been found, holding a landlord liable for negligence in failing to protect against criminal conduct. In *Totten* v. *More Oakland Residential Housing, Inc., supra,* 63 Cal.App.3d 538, the issue was "whether a landlord may be held liable for injuries caused to a stranger, who happens to be on the premises, by the criminal attack of other strangers." (*Id.,* p. 541.) The plaintiff there, while waiting in a laundry room, was injured by pistol shots fired during a fight between two other nontenants. No similar incident had occurred before; the crime was an unpredictable, sudden outburst. The court held that to impose liability under such facts would be unfair.

The present case is factually closer to *Kline* v. *1500 Massachusetts Avenue Apartment Corp.* than to *Totten* v. *More Oakland Residential Housing, Inc.* Appellant was not the victim of a sudden unexpected outburst. Instead, she fell prey to the same type of criminal conduct which had repeatedly been inflicted upon other tenants by the same assailant, a person whose appearance and modus operandi were known to respondents. Not only did respondents allegedly fail to provide "adequate security," they did not warn appellant about the suspected assailant and they actually misrepresented the security measures in force. Even without secure premises, knowledge of the suspect's mode of operation and a view of the composite drawings could have been useful to appellant. If she had known of the danger, she might not have rented an apartment in the complex, or she could have taken precautions based on a knowledge of the suspect's appearance and mode of operation.

Respondents contend that the fact the assault took place inside appellant's apartment should absolve them, since she, not they, had control over that area. This fact is not determinative. Failure to take reasonable precautions to safeguard the common areas under respondents' control could have contributed substantially, as alleged, to appellant's injuries. (See *Kline* v. *500 Massachusetts Avenue Apartment Corp., supra,* 439 F.2d 477, 480.) Also, respondents' liability for failure to warn is not founded upon their control over the common areas but upon their position of superior knowledge and upon their alleged misrepresentations.

An analysis of the factors set forth in *Rowland* v. *Christian, supra,* 69 Cal.2d 108, 113, shows that there is potential liability here. The existence of the most important factor, foreseeability, was alleged. Respondents allegedly knew of the past assaults and of conditions making future attacks likely. By not acting affirmatively to protect appellant, they increased the likelihood that she would also be a victim. This failure to act, either by warning appellant or by providing adequate security, allegedly created a risk of injury to appellant.

Respondents' possible liability is also suggested by the Restatement Second of Torts: "An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of . . . a third person which is intended to cause harm, even though such conduct is criminal." (§ 302B.) Respondents allegedly knew of conditions making sexual assaults likely. The risk was unreasonable because respondents could have decreased the risk with a simple disclosure of information. The criminal act of a third person is a superseding cause *unless* "the actor at the time of his negligent conduct realized or should have realized the likelihood" that the conduct created an opportunity for the crime's commission and that the "third person might avail himself of the opportunity . . . ." (§ 448.) "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, . . . or criminal does not prevent the actor from being liable for harm caused thereby." (§ 449.) The risk of sexual assault by appellant's attacker was the hazard which made respondents' conduct negligent. It was error to sustain the demurrer to the first cause of action.

██ ██ Appellant's second cause of action was for deceit. To state an action for deceit or fraud, a plaintiff must allege a misrepresentation made with knowledge of its falsity and with the intent to defraud, i.e., to induce reliance; the reliance must be justifiable and damages alleged must be a proximate result. (*Seeger* v. *Odell* (1941) 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291]; *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104 [128 Cal.Rptr. 901]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 446, p. 2711; Prosser, Torts (4th ed. 1971) § 105, pp. 685-686.) The representation usually must be of a fact. ██ Appellant alleged that respondents, with intent to induce her to rent an apartment and with knowledge that their representations were false, stated that the complex was safe and was patrolled 24 hours a day by a security force. The latter representation is one of fact. The claim

of safety was at least an opinion made by one with presumed expert knowledge and, thus, can support an action. (*Seeger* v. *Odell, supra;* 4 Witkin, *supra,* § 448, pp. 2712-2713.) Also, in the field of products liability, a representation that a product is safe is a statement of fact. (*Hauter* v. *Zogarts* (1975) 14 Cal.3d 104, 112-113 [120 Cal.Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1282].) Appellant allegedly relied on the assurances and was thus induced to rent an apartment. Since appellant did not know the true facts and since respondents had superior knowledge, the allegations, if proved, would support a finding of justifiable reliance. Causation of the wrong to appellant by respondents' misrepresentations was also alleged.

A deceit action more commonly seeks to recover pecuniary loss. But, "[t]here is no essential reason to prevent a deceit action from being maintained, for intentional misstatements at least, where other types of interests are invaded; and there are a few cases in which it has been held to lie for personal injuries, . . ." (Prosser, *supra,* § 105, p. 684.) ▮ "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." (Civ. Code, § 1709.) The statute does not limit recovery to pecuniary loss. Accordingly, the court in *Work* v. *Campbell* (1912) 164 Cal. 343 [128 P. 943], held that a woman could maintain an action for deceit against a defendant whose intentional misrepresentations caused the plaintiff's husband to desert her. "One who by a fraudulent misrepresentation or nondisclosure of a fact that it is his duty to disclose causes physical harm to the person . . . of another who justifiably relies upon the misrepresentation, is subject to liability to the other." (Rest.2d Torts, § 557A.) An action may be maintained to recover for physical harm proximately caused by a defendant's deceit.

The harm suffered must be one which the defendant must reasonably have contemplated when making fraudulent statements. (See Prosser, *supra,* § 110, p. 732.) A fortuitous event will not give rise to liability merely because the injured party's reliance placed that party in a vulnerable position. For example, a person who makes false statements in order to sell property is not liable for damages when market forces, unknown to the seller and unrelated to the representations, later causes the buyer to suffer a financial loss. (*Id.,* and cases cited therein.) ▮ In the instant case, the assault was not fortuitous; respondents allegedly knew of the danger and of conditions making future assaults likely.

▮

The final issue is whether the facts alleged in the second cause of action can support punitive damages under Civil Code section 3294.[1] Evil motive "is the central element of the malice which justifies an exemplary award." (*G. D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d 22, 30 [122 Cal.Rptr. 218].) In a case such as this one, where the injury is not deliberately inflicted by the defendant, the plaintiff must prove that the defendant acted with conscious disregard of the plaintiff's safety. (*Id.,* p. 32; see *Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452, 462 [113 Cal.Rptr. 711, 521 P.2d 1103].)

Here, the individual respondents allegedly knew of the serious potential danger to appellant as a female tenant. Yet they intentionally misled her in order to advance their pecuniary interest in renting an apartment. Thus conscious disregard of appellant's safety was sufficiently alleged.

The corporate respondents contend that no facts are alleged to support punitive damages against them. But it was alleged that the misrepresentations were made by persons who acted "with the permission and consent" of all the defendants. For the purpose of meeting a general demurrer, this was a sufficient allegation that the corporations had *authorized* their agent's acts; a corporation is liable for punitive damages when it authorizes the wrongful act. (*Ebaugh* v. *Rabkin* (1972) 22 Cal.App.3d 891, 895 [99 Cal.Rptr. 706]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 855-856, p. 3147.)

The judgment is reversed with directions to overrule the general demurrer.

Caldecott, P. J., and Rothenberg, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied February 9, 1978.

---

[1]Civil Code section 3294: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

*Assigned by the Chairperson of the Judicial Council.